UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER WHITEAKER,

    Plaintiff,

v.                                 Case No. 22-10011

CITY OF SOUTHGATE          Sean F. Cox
                                       United States District Court Judge

    Defendants.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION

      Plaintiff, Christopher Whiteaker ("Whiteaker") filed this action against Defendant, the City of Southgate, Michigan ("the City") for violations of the Fair Housing Act ("FHA") and Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"). (ECF No. 15). The matter currently before the Court is the City's Motion for Summary Judgment, brought pursuant to FED. R. CIV. P. 56. (ECF No. 25). The parties have briefed the issues and the Court held a hearing on December 15, 2022. For the reasons set forth below the Court **DENIES** the City's Motion for Summary Judgment because Defendant has failed to carry its burden of proving no genuine issue of material fact.

### BACKGROUND

      On January 4, 2022, Whiteaker commenced this action in this court. (ECF No. 1). Whiteaker filed his Amended Complaint on April 21, 2022. (ECF No. 15). As such, that pleading superseded and replaced the original complaint. The City filed its Motion for Summary Judgment on August 26, 2022. (ECF No.25). Whiteaker filed his response to the Motion for Summary Judgment on September 15, 2022 (ECF No.26), and the City filed its reply on September 22, 2022.

1

(ECF No. 29). In the present Motion for Summary Judgment, the parties still disagree as to several underlying facts. (ECF No. 25 and 26).

The Amended Complaint alleged that the City violated the FHA (Count I) and the PWDCRA (Count II) by denying Whiteaker's request for an exemption from City Ordinance 610.13, which prohibits City residents from maintaining chickens on their property. (ECF No. 15).

From approximately 2012 to March 2021, Whiteaker and his family rented a home in Wyandotte, Michigan. (ECF No. 15, PageID.192). From approximately 2014 to 2021, Whiteaker maintained several chickens while living in Wyandotte. (ECF No. 15, PageID.192). In June 2020, the City of Wyandotte issued him a civil infraction for maintaining the chickens contrary to a city ordinance. (ECF No. 15, PageID.192). In October 2020, Whiteaker successfully claimed a right to maintain the chickens under Michigan's Right to Farm Act. (ECF No. 15, PageID.192).

In March 2021, Whiteaker and his family purchased and moved into a home in Southgate, Michigan. Whiteaker brought his chickens to his new home. (ECF. No. 15, PageID.192). On March 24, 2021, Whiteaker was issued a citation by the City for a violation of Ordinance 610.13 "Keeping of Certain Animals; Permit Required; Sale of Fowl and Rabbits." (ECF. No. 15, PageID.193). The ordinance reads in pertinent part:

> (a) No person shall keep or allow to be kept within the City any cows, horses, pigs, goats, pigeons, or fowl or other domestic animals or insect, except birds, dogs, domestic felines or other harmless domestic pets.

(ECF No. 15, PageID.193).

Whiteaker appeared in the 28th District Court of Michigan to defend himself, and he claimed a right to maintain the chickens under Michigan's Right to Farm Act, just as he had successfully done previously while he lived in Wyandotte. (ECF No. 15, PageID.193). Shortly

thereafter, Whiteaker learned that Michigan's Right to Farm Act was inapplicable to his matter because the chickens and their coop were within 250 feet of a dwelling. (ECF No. 15, PageID.193).

On May 6, 2021, the City issued Whiteaker a second citation. (ECF No.15, PageID.194). Whiteaker then attempted to obtain a permit for the chickens from the City clerk's office, but he was told by a City employee that the permit application could not be found. (ECF No.15, PageID.194).

Whiteaker has suffered from depression and anxiety for many years, and claims the prospect of losing his chickens exacerbated these conditions. (ECF No. 15, PageID.194). Whiteaker learned about emotional support animals ("ESAs") and sought counseling from a mental health provider who conducted testing and diagnosed him with Acute Stress Disorder. (ECF No. 15, PageID.194).

Whiteaker then requested a waiver from Ordinance 610.13 as a reasonable accommodation for his disability and included a letter from his mental health provider as support. (ECF No. 15, PageID.195). The City denied his request for a waiver and pursued the ordinance violation matter in the 28th District Court. (ECF No. 15, PageID.195).

Whiteaker then retained counsel and made a second request for a permit, variance, or waiver of Ordinance 610.13. (ECF No.15, PageID.195). The City also denied this second request. (ECF No. 15, PageID.195).

Whiteaker sought a second opinion for his mental health treatment and was diagnosed with Major Depressive Disorder, Recurrent and General Anxiety Disorder. (ECF No. 15, PageID.195). Whiteaker's conditions result in limitations of major life activities such as difficulties communicating, irritability, sleep disturbances and appetite problems. (ECF No. 15, PageID.199).

The mental health provider concluded that all six of Whiteaker's chickens are ESAs and provided Whiteaker with documentation in support of this conclusion. (ECF No. 15, PageID.195).

During the course of litigation in the 28th District Court, the City conceded that Whiteaker is disabled and that a chicken is an acceptable emotional support animal. (ECF No. 15, PageID.196). Whiteaker claimed that before the 28th District Court, the City only argued "that six (6) chickens is unreasonable[.]" (ECF No. 15, PageID.196).

On December 13, 2021, Whiteaker, through his counsel, made a third request for an exemption to Ordinance 610.13 and provided the City with a supplemental report from Whiteaker's mental health provider, which detailed his depression and anxiety and the resulting difficulties communicating, irritability, sleep disturbances, and appetite problems. (ECF No. 15, PageID.196). The City denied this third request. (ECF No. 15, PageID.197).

To date, the City has refused to unconditionally exempt Whiteaker based on his mental disabilities from Ordinance 610.13. (ECF No. 15, PageID.198).

## STANDARD OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch*., 305 F.3d 520, 526 (6th Cir. 2002).

4

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . ." *Id*. (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

## ANALYSIS

The Fair Housing Act ("FHA"), 42 U.S.C. §3601, et seq., makes it illegal to discriminate against any person in the provision of services or facilities in connection with a dwelling because of a handicap. *Anderson v. City of Blue Ash,* 798 F.3d 338, 360 (6th Cir. 2015 quoting 42 U.S.C. § 3604(f)(2). The FHA defines a "disability" or "handicap" as a mental or physical impairment that substantially limits one or more major life activities. See *Hollis v. Chestnut Bend Homeowners Ass'n, 760 F.3d 531, 538 (6th Cir. 2014)* (citing *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003)). Discrimination under Michigan's Persons with Disabilities Civil Rights Act, MCL §37.1201, et seq. ("PDCRA") parallels the language of the FHA. *Bachman v. Swan Harbour Ass'n*, 252 Mich. App. 400 417, 653 N.W.2d 415, 428 (2002). As such, both claims will be analyzed together.

**I.    Reasonable Accommodation Under the Fair Housing Act (Count I) & the Michigan Persons with Disabilities Civil Rights Act (Count II)**

The FHA "creates an affirmative duty on [a] municipalit[y] … to afford its disabled citizens reasonable accommodations in its municipal zoning practices if necessary to afford such persons equal opportunity in the use and enjoyment of their property." *Anderson v. City of Blue Ash*, 798 F.3d 338, 360 (6th Cir. 2015) (quoting *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002)).

5

As an initial matter, an FHA reasonable accommodation plaintiff must establish that he: (1) suffers from a disability within the meaning of the FHA, (2) he requested an accommodation or modification, (3) the defendant housing provider refused to make the accommodation, and (4) the defendant knew or should have known about the disability at the time of the refusal. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531(6th Cir. 2014).

Here, Whiteaker claims that (1) he suffers from a disability based on his diagnoses of General Anxiety Disorder and Major Depressive Disorder, Recurrent. (ECF No.15, PageID.190). Whiteaker also claims he (2) requested an accommodation in the form of a waiver of Ordinance 610.13 after he provided the City with medical documentation of his disability and the City refused to accommodate him. (ECF No.15, PageID.190). That waiver request was (3) denied. (4) Whiteaker provided evidence of his disability with at least one of the waiver requests. (ECF No.15, PageID.195).

From there, to establish a reasonable accommodation claim, a plaintiff is required to show the proposed accommodation is both reasonable and necessary to afford disabled persons an equal opportunity for enjoyment of the housing of his choice. *Hollis,* 760 F.3d at 540 (citing *Smith & Lee Assocs., Inc v. City of Taylor, Mich.*, 102 F.3d 781, 794 (6th Cir. 1996)).

### A. Reasonableness

"[T]he crux of a reasonable-accommodation…claim typically will be the question of reasonableness." *Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 727 (E.D. Mich. 2014) (quoting *Hollis*, 760 F.3d at 541). To determine whether an accommodation is reasonable, the Court must weigh the burden the requested accommodation would place on the defendant against the benefits the accommodation will provide the plaintiff. *Hollis*, 760 F. 3d at 542. A reasonable accommodation is one which

imposes "no fundamental alteration in the nature of a program" or "undue financial and administrative burdens." Smith & Lee Assocs., Inc., 102 F.3d at 795. Finally, the burden is on the plaintiff to establish the reasonableness of an accommodation. *Groner v. Golden Gate Garden Apartments*, 250 F.3d 1039, 1045 (6th Cir. 2001).

Whiteaker argues he will benefit from the maintenance of his six chickens as ESAs because they provide him disability related comfort. (ECF. No.15, PageID.194). Whiteaker provides a letter from his mental health clinician, Allie Young-Rivard, in support of this claim. (See ECF No. 15-1). In this letter, Ms. Young-Rivard states that removal of the chickens will likely increase Whiteaker's depression and anxiety symptoms. (ECF No.15-1, PageID.200).

Whiteaker further argues his requested accommodation is reasonable under the FHA because it does not "impose an undue hardship or burden upon the entity making the accommodation…and would not undermine the basic purpose which the requirement seeks to achieve." Whiteaker argues that (1) he complies with "the guidance established by the Michigan Department of Agriculture and Michigan State University School of Agriculture" for poultry management (ECF No. 26, PageID.617); (2) his accommodation poses no threat to the public at large (*Id.* at PageID.619); and (3) the City has "not taken any steps to mitigate any alleged potential public health consequences" despite their claimed concerns. (*Id.* at PageID.620). Whiteaker thus claims that because his chickens are kept safely, according to guidance, and because the City has done nothing to mitigate the claimed risk, he imposes no burden on the City. In the absence of any burden, Whiteaker argues his requested accommodation is reasonable under the FHA.

The City argues that Whiteake's accommodation request is unreasonable. The City provided evidence during discovery that chickens can carry pathogens that pose a threat to the public when maintained in close proximity to humans, per the Centers for Disease Control. (ECF

7

No.25-8, PageID.583). The accommodation would thus place a burden on the City "to incur the expense of code enforcement and public health department personnel to mitigate" these public health consequences. (ECF No. 25, PageID.485). In other words, Whiteaker's requested accommodation imposes undue financial and administrative burdens on the City.

The City also argues that the Department of Housing and Urban Development's (HUD) guidance on the issue of "Assessing a Person's Request to Have an Animal as a Reasonable Accommodation" provides a higher burden on Whiteaker under the FHA. (ECF No. 25, PageID.482).

HUD guidance provides a higher burden on animals not commonly kept in households, such as chickens, stating, "the requestor has the substantial burden of demonstrating a disability related therapeutic need for the specific animal or the specific type of animal." (ECF No. 25, PageID.483). Under that guidance, the City is permitted to "take reasonable steps to enforce the policy if the requestor obtains the animal before submitting the reliable documentation from a health care provider that reasonably supports the requestor's disability-related need for the animal." *Id.*

The guidance also states, "that a reasonable accommodation for an assistance animal, including an emotional support animal, may be refused if the animal poses a direct threat that cannot be eliminated or reduced to an acceptable level through actions the individual takes to maintain or control the animal." (ECF No. 25, PageID.484).

Here, the balancing test presents a triable issue of fact. The City claims Whiteaker's requested accommodation places a burden on the City in the form of financial and administrative burdens. Essentially, the City argues that Whiteaker's chickens force the city to expend its money and resources on sending code enforcement and public health department personnel to his home

to confirm the chickens are not a danger to the public health. But the City provides only one document from the CDC to support its claims—and that guidance only states the *potential* dangers chickens can pose. (ECF No. 25, PageID.484). The City also cites HUD guidance that states that a request for a reasonable accommodation may be denied if the animal poses a direct threat. But nowhere in its discovery or exhibits does the City cite any expert testimony, affidavits, or information to support its claims that Whiteaker's chickens pose a danger or are a direct threat to public health in this instance.

Whiteaker provides a letter from his mental health provider stating the benefit his chickens provide him and that the removal of these chickens would worsen his disability. (ECF No.15-1, PageID.206). He also provides documentation of recommendations on how to keep chickens safely but produces no expert testimony or evidence to show he is keeping chickens safely in this case. (ECF No. 26, Ex. 3–5, 9)

In other words, Whiteaker claims a disability and provides evidence of this disability. (ECF No.15-1, PageID.206). The City claims to be burdened financially and administratively by Whiteaker's disability but provides no supporting evidence. Whiteaker says he is keeping his chickens safely, and the City says he is not. These are questions of fact for the jury. Without any evidence from the City proving their burden outweighs Whiteaker's benefit, an issue of fact arises, making summary judgment improper.

### B.  Necessity and Equal Opportunity

Even if the Court found that the City's burden outweighed Whiteaker's benefit, the City would still fail to prove the remaining elements of necessity and equal opportunity. These elements are closely related. *Hollis*, 760 F.3d at 541. An accommodation is necessary if without the requested accommodation the plaintiff will "likely be denied an equal opportunity to enjoy the

9

housing of [his] choice." *Hollis*, 760 F.3d at 541 (quoting *Smith & Lee Assocs., Inc.*, 102 F.3d at 795). "The necessity element is, in other words, a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." *Hollis*, 760 F.3d at 541.

Equal enjoyment is achieved when an accommodation mitigates the effects of a person's disability allowing them to enjoy their property as a non-disabled person could. *Anderson*, 798 F.3d at 361.

The City argues that Whiteaker has not specifically explained how maintaining *six* chickens is necessary to alleviate the symptoms of his disability and thus allow him equal opportunity to use his home. (ECF No. 25, PageID.488). The City further argues that Whitaker failed to provide any details explaining why chickens are the only animals that can meet his therapeutic needs. (*Id.*)

Whiteaker argues that the provided written documentation from his mental health provider speaks for itself. In the report, his provider explains that the chickens foster a calm, peaceful, and relaxing environment for Whiteaker. (ECF No. 15-1, PageID.209). The report further states that Whiteaker's chickens give him purpose and that he is connected to them. (ECF No. 15-1, PageID.209). The provider reasoned that based on Whiteaker's statements it is her understanding that the flock of chickens functions as a unit. (ECF No. 15-1, PageID.209). More specifically, each chicken is necessary for the flock's functionality. (ECF No. 15-1, PageID.209). Finally, the mental health provider stated that in her opinion, removal of any of the six chickens will negatively impact Whiteaker by exacerbating his depression and anxiety symptoms and increasing the likelihood that his daily functioning will decrease. (ECF No. 15-1, PageID.209).

Here, the same issue arises as with the reasonableness element. Whiteaker provides evidence of his disability and his need for the chickens, and the City provides no evidence to the contrary. Again, Whiteaker points to the written statement from his mental health provider as to why maintaining the chickens is necessary to alleviate the symptoms of his disability. In fact, contrary to the City's claim, Whiteaker's mental health provider does explain why Whiteaker needs all six chickens. In her opinion, the removal of even one chicken would negatively impact Whiteaker's depression and anxiety symptoms and increase the likelihood that Whiteaker's daily functioning will decrease. In other words, without his chickens, Whiteaker claims he will not have equal use and enjoyment of his property, as a non-disabled person would.

The City again fails to produce any evidence to refute Whiteaker's claims. The City provides no testimony, affidavits, or evidence of any kind in support of its claims. Instead, the City questions the therapeutic benefits of chickens and the quantity Whiteaker possesses. Questioning Whiteaker's needs does not constitute valid evidence of a lack of necessity or equal opportunity. These are questions of fact for a jury, making summary judgment improper.

For the reasons stated above, the Court **DENIES** the City's Motion for Summary Judgment.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment is DENIED because questions of fact remain.

IT IS SO ORDERED.

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated:  January 19, 2023